## 3671.   RHODES *v.* THE STATE.

If one whose premises are invaded by a riotous mob, who lay siege to his habitation and continue their rioting, shoots into the mob and wounds one of its members, he does not commit the offense of assault with intent to murder; and this is true irrespective of any racial difference between the parties.

DECIDED NOVEMBER 7, 1911.

Indictment for assault with intent to murder; from Greene superior court—Judge James B. Park.   July 24, 1911.

*Joseph P. Brown, Brown & Shipp,* for plaintiff in error.

*Joseph E. Pottle, solicitor-general,* contra.

POWELL, J.   For purposes of the ruling which we are going to make, the facts of this case may be stated as follows:   A white boy had struck a negro boy with a rock.   On a subsequent night a crowd of negro men—some six to ten of them—organized themselves into a party, and, without any warrant or authority, went out hunting for the white boy.   They went to various houses of white persons in the community, where the boy who did the striking with the rock was supposed to be, but where, in fact, he was not, took white men out of their houses, and compelled them to go with them, fired pistols, made riotous noises, and finally came to the home of the defendant, a white man, at whose house he and a num-

ber of friends he had called in were sitting quietly, reading. They demanded that he come out, and when he refused to do so, surrounded the house. Some one within fired on the party outside, and several shots from the outside party were fired toward the house. After the besieging party had remained around the house for about 30 minutes or more, and after one branch of their party had brought the defendant's brother on some pretext to this place, and when, in his endeavor to escape, he had been shot at and mortally wounded, some one within the house, alleged to have been. the defendant, fired a shotgun, hitting one of the negroes in the leg; and for this offense, under these circumstances, this defendant has been convicted of assault with intent to murder.

Now, let him who will cry out "Impossible!" "Monstrous!" "Unheard of!" or what he pleases. The only difference in the suppositious case which has just been stated and the case at bar is that it was a negro boy who struck the white boy with a rock, and that it was a white crowd who were spreading terror among the negroes, and that the defendant is a negro, and not a white man, and that the man who was shot is a white man, and not a negro. It would be folly to speak of the equality of all men before the law, if we should allow this conviction to stand. We would have to write a racial exception into that section of the code (Penal Code (1910), § 72) which provides that it shall be justifiable to shoot, and even kill, to prevent a forcible attack and invasion upon the property or habitation. These white men, or boys, as the case may be (for the record does not disclose their ages), had no right whatever to enter upon this defendant's premises in the riotous and tumultuous manner in which they did. Their excuse that they were out hunting for a negro boy who had hit a white boy in nowise mitigates their offense, which, under the law, was nothing less than riot. They were not officers; they had no warrant; the person for whom they were looking was not even upon the premises of the defendant; and no reasonable cause whatever for suspecting he was there was shown. It was error even for the court to submit to the jury instructions on the subject of right to arrest without warrant, for no such issue was raised by the evidence. It is very probable that this instruction induced the jury into rendering the. verdict which strikes us as so manifestly wrong.

*Judgment reversed.*